# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2074 | **DATE** | January 13, 2004 |
| **CASE TITLE** | James Bradshaw  v  Thomas Mazurski, etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing set for 3/2/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ Memorandum opinion and order entered. Defendant City of Chicago's motion to dismiss count I is granted. Federal defendants' motion to dismiss count I is granted as to Centraacchio and denied as to Radon. Count I is dismissed with prejudice as to US Custom & US Postal. Counts II and III are dismissed as to all moving defendants. Second amended complaint is due by 2/24/04. Response is due by 2/24/04.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JAN 13 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 40 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

DOCKETED
JAN 1 5 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BRADSHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.   03 C 2074 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| Chicago Police Officer THOMAS MAZURSKI; ) | |
| Chicago Police Officer CHARLES DALY; the ) | |
| CITY OF CHICAGO; United States Customs ) | |
| Agent CENTRACCHIO; and the UNITED ) | |
| STATES CUSTOMS SERVICE; United States ) | |
| Postal Service Inspector BENEDICT R. RADON, ) | |
| and the UNITED STATES POSTAL SERVICE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Bradshaw filed a first amended complaint against Chicago Police Officers Thomas Mazurski and Charles Daly, the City of Chicago, Customs Inspector Lawrence Centracchio, United States Postal Service Inspector Benedict Radon, the United States Postal Service and the United States Customs Service, arising from defendants' application for and execution of a warrant to search plaintiff and his residence. Specifically, plaintiff asserts a claim of unlawful search and seizure in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States (Count I), false arrest and detention in violation of the Fourth and Fourteenth Amendments (Count II), and malicious prosecution under Illinois law (Count III). The federal defendants and the City of Chicago have moved separately to dismiss plaintiff's claims against

40

them.[1] For the reasons stated below, the City of Chicago's motion is granted, and the federal defendants' motion is granted in part and denied in part.

## FACTS

According to plaintiff's complaint, on March 21, 2001, Centracchio, acting under his authority as an agent for the U.S. Customs Service, opened an international package addressed to plaintiff. The package contained two bottles of nail enamel remover, and Centracchio contacted Postal Inspector Radon and Chicago Police Officer Mazurski of the Chicago Police Department's Postal Interdiction Team to tell them what he discovered.

On March 22, 2001, Mazurski applied for and was issued a search warrant to execute a controlled delivery and to search "Jim Bradshaw or anyone taking control of the U.S.P.S. Priority Mail Parcel" at the address listed on the package. Plaintiff alleges that the search warrant was invalid, however, because it was based on Mazurski's false testimony that the liquid contained in the two bottles in the package had been field tested for the presence of gammahydroxybutyrate (GHB), a controlled substance, with positive results. According to plaintiff, no field test of the liquid had been conducted, and at the time he filed the application for the search warrant, Mazurski allegedly did not have any documentation of the field-test that was allegedly performed or the results of that testing. Plaintiff alleges that the Chicago Police Department has no policy or procedure in place requiring that its officers have copies of reports regarding the results of field testing performed outside their presence when they apply for a search warrant on the basis of that field testing.

---

[1]Defendants Daly and Mazurski filed answers to plaintiff's first amended complaint on September 12, 2003, and August 4, 3003, respectively.

Plaintiff alleges that Radon and Centracchio acted in concert with the Chicago Police Department and the defendant officers to further investigate the package and its intended recipient. According to the first amended complaint, Radon, "acting pursuant to the invalid search warrant," prepared the package for a controlled delivery, which was then executed by Radon, Mazurski, and other police officers. Plaintiff alleges that Radon did so with "apparent knowledge" that no testing had been done on the substance contained in the package.

Several items were seized from plaintiff's residence during the execution of the search warrant, and he was arrested for possession of a controlled substance with intent to deliver (720 ILCS 570/401). According to the first amended complaint, prosecution of plaintiff ensued, and a disposition of nolle prosequi was entered in the Circuit Court of Cook County, Illinois, on April 25, 2002.

In Count I, plaintiff seeks damages under 42 U.S.C. § 1983 arising from defendants' "intrusion... into the security of plaintiff's person and residence" in violation of plaintiff's rights under the Fourth and Fourteenth Amendments. Count II asserts a false arrest claim under the Fourth and Fourteenth Amendments for which plaintiff seeks damages under 42 U.S.C. § 1983. In Count III, plaintiff asserts a claim of malicious prosecution under Illinois law. In support of that claim, plaintiff states first that Daly's false statement to the grand jury that the liquid in the package had been field tested was the basis for the grand jury's charges against him, and, second, that:

> Mazurski's false sworn statement that a field test had been performed on the material discovered in the package was the basis on which the Court issued the original search warrant, which in turn was the basis for the unlawful discovery of the material on which Bradshaw's prosecution was based. Therefore, the entire

prosecution was based on the false information provided by defendants to the prosecution.

Plaintiff further alleges that defendants Radon and Centracchio were acting under color of federal law at all times mentioned in the amended complaint.[2]

## **DISCUSSION**

In considering a Rule 12(b)(6) motion, the court is obligated to accept all well-pleaded facts in plaintiff's amended complaint as true and draw all reasonable inferences in favor of the non-moving party. Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995). The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint, any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

1. Count I: Unlawful Search and Seizure (against Radon, Centracchio, and the United States Postal Service[3])

The federal defendants have moved to dismiss Count I on the following grounds: (1) plaintiff has not adequately alleged that Centracchio and Radon were acting under color of state law, and (2) plaintiff may not sue the United States Postal Service for damages. For the reasons stated below, the federal defendants' motion to dismiss Count I is granted with respect to Centracchio and the United States Postal Service and is denied with respect to Radon.

---

[2]In his response brief, however, plaintiff argues that Centracchio and Radon were acting in concert with the members of the Chicago Police Department to violate his civil rights.

[3]In his response brief, plaintiff stipulated to the dismissal of all claims against the United States Customs Service.

There are two circumstances in which a defendant may be found to act under color of state law for purposes of § 1983: (1) when the state has cloaked the defendant in some degree of authority - normally through employment or some other agency relationship; or (2) when the defendant has conspired or acted in concert with state officials to deny constitutional rights. Case v. Milewski, 327 F.3d 564, 567 (7th Cir. 2003); Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1352 (7th Cir. 1985). Plaintiff acknowledges in his first amended complaint that Radon and Centracchio are federal, not state, officials, and does not allege, even in a cursory manner, that they were agents or employees of the Chicago Police Department.

The question then becomes whether plaintiff has adequately pled that Radon and Centracchio acted in concert with state officials to deny plaintiff his rights under the Fourth Amendment. The allegations in the first amended complaint relating to this issue are that: (1) Centracchio contacted Radon and Mazurski to "relate[] to them what he had discovered"; (2) Centracchio and Radon acted "in concert" with the Chicago Police Department and the defendant officers to further investigate the package and its recipient; (3) Radon, Mazurski and other officers of the police department executed the "invalid" search warrant; and (4) Radon participated in the preparation of the package for controlled delivery and executed the search warrant "despite apparent knowledge that there had never been field testing done on the substance contained in the package."

Under the liberal pleading standards of the Federal Rules of Civil Procedure, the court concludes that plaintiff's allegations regarding Radon's participation in the execution of the search warrant are adequate, at the pleading stage, to survive the instant motion to dismiss. In reaching this conclusion, the court construes plaintiff's allegation regarding Radon's "apparent"

knowledge that there had been no field testing as an allegation, made on information and belief, that Radon knew that Mazurski had lied on his affidavit in support of the search warrant.

Plaintiff's allegations regarding Centracchio's participation are insufficient to state a claim against him, however. As the federal defendants point out in both their motion and their reply brief, there is no allegation that Centracchio participated in the search, arrest, or prosecution of plaintiff that gave rise to his alleged injuries. Moreover, aside from conceding that his claims against Centracchio in his official capacity are barred by sovereign immunity, plaintiff failed to respond to the federal defendants' attack on the insufficiency of his pleadings regarding Centracchio's involvement in the events giving rise to the instant action. Accordingly, Count I is dismissed as to defendant Centracchio.

Count I must also be dismissed as to the United States Postal Service. The Postal Reorganization Act, 39 U.S.C. § 401(1), provides that the United States Postal Service shall have the power to "sue and be sued in its official name." Even assuming arguendo that the "sue and be sued" language constitutes a waiver of the Postal Service's sovereign immunity for constitutional torts, plaintiff cannot identify any substantive law that provides him a cause of action for his Fourth Amendment claim.

In F.D.I.C. v. Meyer, 510 U.S. 471, 483 (1994), the Supreme Court dismissed a damages claim against the Federal Deposit Insurance Corporation (the "FDIC"). According to the Meyer court, although the FDIC's sue-and-be-sued clause waived its sovereign immunity for constitutional torts, plaintiff's claim for damages still failed because Bivens[4] did not provide a

---

[4]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 393 (1971), the Supreme Court held that an individual injured by a federal agent's alleged
(continued...)

cause of action against a federal agency. Among other reasons for this result, the court noted that implying a damages remedy against federal agencies for constitutional torts would undermine the deterrent effect of the Bivens remedy against individuals and would create an enormous financial burden for the federal government. Id. at 485-6. See also Tsau v. National Science Foundation, 2000 WL 1466665 (N.D.Ill. September 29, 2000) ("[T]he Supreme Court has specifically declined to imply a Bivens action against federal agencies."). Following Meyer, the court dismisses Count I as to the United States Postal Service, with prejudice.

2.  Count I: Unlawful Search and Seizure (against the City of Chicago)

The City of Chicago advances two arguments for dismissing Count I: (1) plaintiff's claim is "at odds with the well-established constitutional principle that law enforcement officers may rely upon the representations of other law enforcement officers in making a determination of probable cause"; and (2) plaintiff's theory of recovery against the City of Chicago is inconsistent with his claims against Mazurski. For the reasons discussed below, the court agrees with the City of Chicago's first argument, and thus need not reach the merits of its second argument.

42 U.S.C. § 1983 does not recognize the theory of respondeat superior as a basis for municipal liability. Monell v. Department of Social Services, 436 U.S. 658 (1978). To state a valid § 1983 claim against the City of Chicago, plaintiff must allege that: (1) the City had an express policy that, when enforced, caused a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, was so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) that the

---

[4](...continued)
violation of his Fourth Amendment rights may bring an action for damages directly against the agent.

constitutional injury was caused by a person with final policymaking authority. McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995) (citations omitted).

In the instant case, plaintiff bases his Monell claim on the absence of a policy under circumstances that allegedly demand one. According to the first amended complaint, the failure of the Chicago Police Department to have a policy or procedure in place requiring that its officers, when applying for a search warrant, have copies of reports regarding the results of field testing performed outside their presence when such field test results are the basis for the search warrant, leads directly to the violation of Fourth Amendment rights.

The City of Chicago cites to U.S. v. Hensley, 469 U.S. 221, 222-3 (1985), for the proposition that "law enforcement officers are entitled to rely upon the representations of officials from foreign jurisdictions, and need not have personal knowledge to form a reasonable belief of probable cause." According to the Hensley court, id. at 232:

> If a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer justifies a stop to check identification, to pose questions, or to detain the person briefly while attempting to obtain further information. If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment. In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit.

The "collective knowledge" doctrine, as articulated in Tangwall v. Stuckey, 135 F.3d 510 (7th Cir. 1998), is consistent with Hensley. In Tangwall, id. at 517 (citations and quotations omitted), the Seventh Circuit explained that:

> [T]he police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. *In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause.* [Emphasis in original.]

8

Thus, the collective knowledge doctrine permits an officer to rely upon knowledge of another officer, or the knowledge of his agency, in making an arrest. Accordingly, when officers are in communication regarding a suspect, knowledge of one officer may be imputed to another. U.S. v. Sawyer, 224 F.3d 675, 680 (7th Cir. 2000) (citing Hensley, 469 U.S. at 232-233, and Tangwall, 135 F.3d at 517).

With this background in mind, the court concludes that plaintiff's Monell claim, which would require officers to obtain written reports of testing rather than allowing them to rely on representations of inspectors and fellow officers, is at odds with Hensley and Tangwall. The court thus dismisses Count I against the City of Chicago.

3. Counts II and III - False Arrest and Malicious Prosecution

In Counts II and III, plaintiff asserts claims of false arrest under the Fourth and Fourteenth Amendments against all individual defendants, and malicious prosecution under Illinois law against the defendant police officers. Defendants maintain that plaintiff cannot prove an essential element of these claims, specifically that he was arrested and prosecuted without probable cause.

To state a claim of false arrest, plaintiff must allege that no probable cause existed for his arrest. Williams v. Jaglowski, 269 F.3d 778 (7th Cir. 2001). Similarly, to state a claim for malicious prosecution under Illinois law, plaintiff must allege, among other things, that no probable cause existed for his prosecution. Meerbrey v. Marshall Field & Co., 564 N.E.2d 1222, 1231 (Ill. 1990).

With respect to his false arrest claim, plaintiff alleges that:

> [s]ince the [search] warrant was not supported by probable cause, defendants were not legally permitted to be in plaintiff's residence. Thus, any materials seized were unlawfully seized and could not be the basis of an arrest of [plaintiff]. That being the case, the arrest of [plaintiff] was also unsupported by probable cause and was thus an unlawful detention.

9

As for his malicious prosecution claim, plaintiff alleges that:

Mazurski's false sworn statement that a field test had been performed on the material discovered in the package was the basis on which the Court issued the original search warrant, which in turn was the basis for the unlawful discovery of the material on which [plaintiff's] prosecution was based. Therefore, the entire prosecution was based on the false information provided by defendants to the prosecution.

Plaintiff's own allegations suggest that his arrest and subsequent prosecution were based on material discovered during the search of his residence. This suggests that defendants had probable cause to arrest and prosecute plaintiff, thus defeating plaintiff's claims of false arrest and malicious prosecution. Plaintiff attempts to circumvent this inevitability by asserting that the search which led to the arrest and subsequent prosecution was not supported by probable cause, and thus could not serve as the basis for his arrest and prosecution.

The fact that the search might not have been supported by probable cause does not establish a claim for false arrest and malicious prosecution, however. Although that evidence might not have been admissible at a criminal trial as a result of the exclusionary rule, that does not mean that such evidence could not be used to establish probable cause for plaintiff's subsequent arrest and prosecution. The exclusionary rule is generally limited to criminal proceedings, and both the Supreme Court and Seventh Circuit have recognized a number of situations in which it cannot apply. See, e.g., United States v. Janis, 428 U.S. 433 (1976) (exclusionary rule not applicable to federal civil tax proceedings); U.S. v. Calandra, 414 U.S. 338 (1974) (exclusionary rule does not apply to grand jury proceedings); U.S. v. Brimah, 214 F.3d 854 (7th Cir. 2000) (exclusionary rule does not apply to sentencing hearings).

In Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999), the Second Circuit explicitly declined to apply the exclusionary rule, and the related fruit of the poisonous tree doctrine, to a civil rights action brought under § 1983. The plaintiff in Townes was allegedly subjected to an illegal search and seizure that led to the discovery of handguns that were in plaintiff's possession, which in turn led to his arrest, incarceration and subsequent conviction (which was ultimately overturned on appeal). The plaintiff in that case sought damages for injuries that were "derivative" of the search and seizure, including his arrest, conviction, and incarceration. The Second Circuit held that the plaintiff's claims should have been dismissed by the district court pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiff's injuries were not fairly traceable to the actual violations of his civil rights. Id. at 141.

According to the Townes court, the plaintiff could not state a claim for false arrest because, although the defendants in that case lacked probable cause to stop and search him, they "certainly had probable cause to arrest him upon discovery of the handguns." Id. at 149. Noting that the fruit of the poisonous tree doctrine was unavailable,[5] the court thus concluded that "the lack of probable cause to stop and search [did] not vitiate the probable cause to arrest." Id.

The court finds the reasoning in Townes persuasive. Because plaintiff appears to concede the facts that establish that his arrest and prosecution were supported by probable cause, the court concludes that plaintiff has failed to state a claim for false arrest and malicious prosecution against the moving defendants.

---

[5]According to the Townes court, "[a] § 1983 action, like its state tort analogs, employs the principle of proximate causation." Id. at 146. The court then observed that adopting the fruit of the poisonous tree doctrine in a § 1983 action would "impermissibly recast the relevant proximate cause inquiry to one of taint and attenuation." Id. The court therefore concluded that the fruit of the poisonous tree doctrine was not available to "elongate the chain of causation." Id.

11

## CONCLUSION

For these reasons, the City of Chicago's motion to dismiss Count I is granted, and the federal defendants' motion to dismiss Count I is granted with respect to Centracchio and denied with respect to Radon. Count I is dismissed with prejudice as to the United States Custom Service and United States Postal Service, and Counts II and III are dismissed as to all moving defendants. Plaintiff is directed to file a second amended complaint conforming to this opinion by February 3, 2004. Defendants shall file their response(s) by February 24, 2004. The parties are directed to appear for a status report on March 2, 2004, at 9:00 a.m.

**ENTER:** **January 13, 2004**

*[signature]*

**Robert W. Gettleman**
**United States District Judge**